**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROLE COLEMAN-LEA,

    Plaintiff,

    v.

METROPOLITAN LIFE INSURANCE COMPANY et al.,

    Defendants.

No. C 05-04049 JSW

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Defendants Metropolitan Life Insurance Company ("MetLife"), International Business Machines Corporation ("IBM") and IBM Long Term Disability Plan ("the Plan") (collectively "Defendants"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby GRANTS the motion for summary judgment.

**BACKGROUND**

This action arises from the denial of Plaintiff Carole Coleman-Lea's claim for benefits under the Long Term Disability Plan provided by her employer, IBM. Plaintiff brought this action to challenge the denial of her claim for disability benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

The Plan provides long term benefits to qualified IBM employees if they are rendered "Totally Disabled" within the meaning of the term in the Plan. The Plan defines "Totally Disabled" in pertinent part as:

> Under the Long-Term Disability Plan, totally disabled means that during the first 12 months after you complete the waiting period, you cannot perform the important duties of your regular occupation with IBM because of sickness or injury. After expiration of that 12 month period, totally disabled means that, because of a sickness or injury, you cannot perform the important duties of your occupation or of any other gainful occupation for which you are reasonable fit by your education, training or experience. You must be under the appropriate care and treatment of a doctor on a continuing basis. At your own expense, proof of disability, satisfactory to Metropolitan, must be submitted to Metropolitan. "Your regular occupation with IBM" means the regular occupation you had with IBM as of your last day of active status.

(Admin. 0016-17.) The amount of monthly benefit under the Plan in 66 and 2/3 percent of regular monthly compensation, reduced by payments received from certain other sources. (Admin. 0016.)

Plaintiff worked for IBM as a Charitable Contributions Coordinator, described in the record as a sedentary, light duty position which required her to use a computer to perform project management and planning functions. (Admin. 0172-74.) On January 30, 2004, Plaintiff stopped working and reported that she because totally disabled as of the same date. (Admin. 0116.)[1] On September 30, 2004, Plaintiff submitted a claim to MetLife for long term benefits asserting that she could no longer perform her job due to multi-level stenosis in her lower back and arthritis in her knees and back. (Admin. 0208-09.)

As part of the claim process, IBM submitted a statement dated December 7, 2004, which indicated that Plaintiff's job was entirely sedentary and did not require physical activity such as standing, walking, climbing, balancing, cramped or unusual positions, extended or overhead reaching, pushing, pulling, twisting, grasping, bending, squatting, highly repetitive motion, carrying or lifting. (Admin. 0172-74.)

Plaintiff submitted three Attending Physician Statements, one from her chiropractor dated November 23, 2004, another from her orthopedic surgeon dated December 6, 2004, and the last from her family care practitioner dated December 8, 2004. (Admin. 0192-94, 0161-64, 0131-33.) All three of the treating doctors indicated that Plaintiff was capable of performing duties that required sitting, walking, finger dexterity and commuting. (Admin. 0193, 0163,

---

[1] Plaintiff received an unsatisfactory performance review for the period immediately preceding her decision to stop work due to disability. (Admin. 0307-319.) Because the review did not bear on MetLife's decision to deny her benefits, the Court deems this fact to be irrelevant to its review of the denial of benefits.

1  0132.)  In addition, all three doctors indicated that they believed Plaintiff to be totally disabled
2  by checking a single box, and the surgeon and family care doctor both indicated that her
3  limitation of functional capacity was so severe as to render Plaintiff incapable of performing
4  even minimum sedentary work.  (Admin. 0194, 0164, 0133.)  Plaintiff's chiropractor indicated
5  that Plaintiff was able to perform certain tasks required of a sedentary position, and also
6  indicated that Plaintiff was not so severely disabled as to render her incapable of performing
7  clerical/administrative (sedentary) activity and was not totally disabled for any occupation.
8  (Admin. 0194.)

9  Once Plaintiff's claim was submitted, MetLife had Robert Y. Pick, M.D., MPH, an
10 independent Board-certified orthopedic surgeon review the medical records and he opined that
11 Plaintiff was "able to engage in at least light work activities."  (Admin. 0126.)  Dr. Pick also
12 concluded that there was no "orthopedic or musculoskeletal basis that would preclude Ms.
13 Coleman-Lea from engaging in sedentary work activities as per her job description."  (*Id.*)
14 Lastly, Dr. Pick found that Plaintiff was capable of performing a job that entailed sitting up to
15 six hours per day, standing up to three hours per day and walking up to two hours per day.
16 (Admin. 0128.)  After review of further additional medical records submitted by Plaintiff, Dr.
17 Pick concluded that the additional records were consistent with the previously diagnosed
18 conditions, but did not render Plaintiff incapable of performing at least sedentary work.
19 (Admin. 0123.)

20 On February 10, 2005, MetLife sent a letter to Plaintiff denying her claim due to the
21 conclusion that she was not totally disabled as defined in the Plan and was therefore ineligible
22 to receive long term benefits.  (Admin. 0116-118.)  The letter indicated that Plaintiff had a right
23 to appeal the decision.  (Admin. 0117-18.)

24 Plaintiff submitted her appeal on April 20, 2005 and submitted additional medical
25 records for review.  (Admin. 0101-02.)  MetLife submitted Plaintiff's entire, supplemented file
26 for further review to Frank Nisenfeld, M.D., a Board-certified orthopedic surgeon.  (Admin.
27 0089-91.)  Dr. Nisenfeld concurred with Dr. Pick and opined that Plaintiff could not use force
28 greater than five pounds with either wrist and could not perform overhead work with the right

3

shoulder, but indicated that these limitations did not "make her totally functionally impaired from her job." (Admin. 0091.) Again, based on the entire record and the conclusion of the independent reviewing doctors, MetLife denied the appeal on June 14, 2005 and indicated that Plaintiff had the "functional ability to perform sedentary work." (Admin. 0088.) The final denial also notified Plaintiff of her right to bring an ERISA action in federal court. This action ensued.

The Court will address any additional specific facts as required in the analysis.

## ANALYSIS

### A.     Legal Standard on Summary Judgment.

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court's task to

4

1  "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v.
2  Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make
3  this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at
4  323.

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**B.     Standard of Review.**

ERISA allows a participant in an employee benefit scheme to bring a civil action to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). Courts review a denial of benefits challenged under § 1132(a)(1)(B) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). However, where there is a proper grant of discretion, the deferential abuse of discretion standard is triggered. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999).

In this case, the policy language unambiguously confers discretionary authority upon MetLife. The grant of authority reads in pertinent part:

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Admin. 0025-26.)

The Court finds there is no ambiguity in the language conferring discretion upon MetLife; it clearly assigns discretion and authority to construe and interpret the policy and to decide all questions of eligibility and entitlement to any policy benefits to MetLife. *See, e.g.,*

5

*Abatie v. Alta Health and Life Ins. Co.*, 458 F. 3d 955, 963-64 (9th Cir. 2006) (holding that there are no "magic" words that conjure up discretion on the part of the plan administrator, but the granting of the power to interpret plan terms and to make final benefits determinations confers discretion on the plan administrator).

Plaintiff argues that there was an apparent conflict of interest because MetLife acted as both the funding source and the administrator of the Plan, thereby evidencing a financial conflict. *See Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 977 (9th Cir. 1999) (when insurer both funds and administers plan, it operates under an apparent conflict of interest). Although an abuse of discretion review is required where, as here, the ERISA plan grants discretion to the plan administrator, such review is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict." *Abatie*, 458 F.3d at 967. "The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id.* at 968. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, *Lang v. Long-Term Disability of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 799 (9th Cir. 1997); fails adequately to investigate a claim or ask the plaintiff for necessary evidence, *Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1463-64 (9th Cir. 1997); fails to credit a claimant's reliable evidence, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003); or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record. *Abatie*, 458 F.3d at 968-69. On the record before this Court, there is no evidence of a conflict of interest beyond the apparent conflict which exists when the insurer both funds and administers the plan.

Under *Abatie*, a further question arises when a court must consider how much weight to give a possible conflict of interest under the abuse of discretion standard and whether, in

6

making that determination, the court may consider evidence outside the record. *Id.* at 970. Because the Court does not find any conflict of interest and does not perceive the additional declaration from Ms. Coleman-Lea to be relevant on the issue of conflict of interest, the Court declines to exercise its discretion to consider evidence outside the administrative record to decide the nature, extent and effect on the decision-making process of any conflict of interest. *See Abatie*, 458 F.3d at 970. Therefore, Defendants' objections to Plaintiff's declaration are sustained.[2]

**C.    Denial of Coverage Decision Reviewed for Abuse of Discretion.**

Abuse of discretion standard requires minimal showing. *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996) (holding that the abuse of discretion standard does not permit the overturning of a decision where there is relevant evidence that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence). "It is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Snow*, 87 F.3d at 331. "The mere fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous. Rather, review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed. That standard certainly does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is relevant evidence

---

[2] In addition, the Court finds that the evidence relating to Plaintiff's job description is already in the record and was part of the analysis performed by MetLife. (*See* Admin. 0172-74.) Plaintiff received her employer's job description when she received the full administrative record and did not seek to supplement the record despite further supplementation opportunities throughout the claims process. *See Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1282 n.3 (9th Cir. 1990) (regarding attempts to supplement the record during litigation, the district court held that while perhaps other information not presented to the administrator might support his claim for benefits, "they were irrelevant since he did not get them to Metropolitan, despite Metropolitan's many requests for further ... information. We agree.") In addition, the Court finds the extra-record evidence, the Social Security Administration's Notice of Decision, attached to Ms. Coleman-Lea's declaration to be irrelevant. *See Black & Decker*, 538 U.S. 834 (holding that the rules and standards governing ERISA and social security benefits decisions differ); *see also Madden*, 914 F.2d at 1285 (holding that ERISA benefit decisions are not required to conform to social security benefits decisions).

7

1 [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to
2 draw two inconsistent conclusions from the evidence." *Id.* at 331-32 (internal citations
3 omitted).

4 The Court can set aside an administrator's discretionary decision only when it is
5 arbitrary and capricious. *Jordan v. Northrop Grumman Welfare Benefit Plan*, 370 F.3d 869,
6 879 (9th Cir. 2004); *Snow*, 87 F.3d at 330. In other words, the Court will uphold the decision
7 by MetLife so long as it is "grounded on *any* reasonable basis." *Jordan*, 370 F.3d at 879
8 (emphasis in original). In order to be subject to reversal, the finding that the employee is not
9 totally disabled must be clearly erroneous. *Id.* Moreover, the fact that an administrator's
10 decision is in conflict with evidence in the record is not alone sufficient to meet the clearly
11 erroneous standard. *Martin v. Continental Casualty Co.*, 96 F. Supp. 2d 983, 990 (N.D. Cal.
12 2000) (citing *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993)).
13 Rather, a "firm and definite conviction that a mistake has been committed" is necessary to meet
14 this standard. *Martin*, 96 F. Supp. 2d at 990 (quoting *Taft*, 9 F.3d at 1473).

15 There is substantial evidence to support the decision to deny Plaintiff benefits under the
16 policy. After Plaintiff submitted a claim to MetLife for long term disability benefits on
17 September 30, 2004, IBM submitted a statement dated December 7, 2004, indicating that
18 Plaintiff's job was entirely sedentary and did not require any physical activity such as standing,
19 walking, climbing, balancing, cramped or unusual position, extended of overhead reaching,
20 pushing, pulling, twisting, grasping, bending, squatting, highly repetitive motion, carrying or
21 lifting. (Admin. 0172-74.) The statement indicated that Plaintiff's former position involved
22 project management and planning and, as such, required the use of a computer, and included 61
23 to 100 percent sitting, fine hand dexterity and precise verbal/written communication. (Admin.
24 0173.)

25 All of Plaintiff's doctors and the independent physician consultants hired by MetLife to
26 review Plaintiff's records, concur that Plaintiff could perform a light duty, sedentary job
27 requiring the use of a computer that did not involve any strenuous physical activity. (Admin.
28 0089-91, 0122-29, 0132, 0163, 0193.) Although two of Plaintiff's doctors checked conclusory

boxes on their statements indicating their belief that Plaintiff was not able to perform even sedentary work, their particularized assessment of her ability to perform actual activities involved in the job indicated their belief that Plaintiff was actually capable of performing the activities required by her occupation. (*See* Admin. 0115, 0133, 0164 *contra* 0114, 0132, 0163, 0193-94.) In addition, MetLife acted within its discretion to rely upon the opinions of two independent physicians who reviewed Plaintiff's medical evidence and determined that she was capable of performing the sedentary tasks associated with her prior work. (Admin. 0126, 0089-91.) Although the administrator may not arbitrarily refuse to credit a claimant's reliable evidence including the opinions of a treating physician, it does not appear that that is what occurred here. *See Black & Decker*, 538 U.S. at 834. In this case, MetLife based their decision to deny benefits both by relying upon the independent medical opinions of its two independent physicians, as well as relying upon the detailed opinions of Plaintiff's treating physicians who all concurred that Plaintiff could perform the basic functions of her prior work, rendering her not disabled under the Plan's definition. In addition, the fact that Plaintiff's treating physician failed to respond to the independent physician's repeated attempts to respond to the orthopedist's independent assessment allowed MetLife reasonably to rely on the independent, and uncontradicted, judgment of its medical examiners. *See Jordan*, 370 F.3d at 880.

Under the abuse of discretion standard, there is sufficient evidence to sustain MetLife's denial of benefits. Therefore, Defendants' motion for summary judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Judgment shall be entered in favor of Defendants Metropolitan Life Insurance Company, International Business Machines Corporation, and IBM Long Term Disability Plan. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 11, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9